**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIAM WALKER,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:20-2293** |
| **v.** | : | **(JUDGE MANNION)** |
| **DR. DAVID EDWARDS,** | : | |
| **Defendant** | : | |

**<u>MEMORANDUM</u>**

**I. <u>BACKGROUND</u>**

Plaintiff, William Walker, an inmate confined at the State Correctional Institution, Camp Hill ("SCI-Camp Hill"), Pennsylvania, filed the above caption civil rights action pursuant to 42 U.S.C. §1983. (Doc. 1). He complains of an injury to his left foot when he was issued a pair of refurbished boots. <u>Id</u>. The sole named Defendant is Dr. David Edwards. <u>Id</u>.

Presently before the Court is Defendant's motion to dismiss Plaintiff's complaint. (Doc. 21). The motion is fully brief and is ripe for disposition. For the reasons that follow, the Court will grant Defendant's motion to dismiss.

## II. ALLEGATIONS IN COMPLAINT

Plaintiff complains of inadequate medical care he received for an injury to his left foot caused by a pair of refurbished boots. Although his complaint is scant on details, his brief in opposition to Defendant's motion to dismiss outlines the treatment and consideration that was given to his wounds, as follows:

• **November 6, 2017:** Plaintiff's left foot wound was examined by an unidentified physician assistant, who prescribed Nystatin (an antifungal medication).

• **December 11, 2017:** Plaintiff's left foot wound was examined by an unidentified medical provider, who prescribed Terbinafine Hydrochloride (an antifungal medication).

• **January 8, 2018:** Plaintiff's left foot wound was examined by an unidentified physician assistant, who prescribed Fluconazole (an antifungal medication).

• **January 16, 2018:** Plaintiff's left foot wound was examined by an unidentified physician assistant, who prescribed Fluconazole (an antifungal medication).

• **January 29, 2018:** Plaintiff's left foot wound was examined by an unidentified physician assistant, who prescribed "a packet of unidentified pills."

• **February 2, 2018:** Plaintiff's left foot wound was examined by an unidentified physician assistant, who advised Plaintiff that the "medication needs time to work and [to] give the medication more time."

• **Unknown date in February 2018:** Plaintiff was seen by Dr. Edwards, who denied Plaintiff's request to be seen by a podiatrist; however, he did "mandate Plaintiff's left foot to receive

wound care treatment." Plaintiff states that his wound care treatment commenced on February 6, 2018 and continued through June 26, 2018. During this period of time, Dr. Edwards also continued the medications that were previously prescribed for Plaintiff's foot wound.

• **April 23, 2018:** Plaintiff was examined by Timothy Rutherford, PA-C, who "issued Plaintiff a new pair of boots and a packet of pills."

• **May 10, 2018:** Plaintiff was examined by Timothy Rutherford, PA-C, who examined Plaintiff and prescribed medication for his foot wound.

• **June 6, 2018:** Plaintiff was examined by Timothy Rutherford, PA-C, who examined Plaintiff and prescribed medication for his foot wound.

• **June 26, 2018:** Plaintiff's wound care treatment ended, and he began using medication purchased from commissary.

• **July 30, 2018:** Plaintiff was examined by Vivian Henry, PA-C, who diagnosed Plaintiff with Ulcerative Tinea Pedis,[1] and ordered "medical lay-in" for one month, with the hope that staying off his foot would promote healing. Although he claims that PA Henry also ordered a wound culture, he claims that this was not done due to "bad decisions" by Dr. Edwards.

• **August 7, 2018:** Plaintiff was examined by Dr. Voorstad, and new wound care treatment orders were issued. Wound care

---

[1]The most severe form of tinea pedis infection (also known as Athlete's Foot), called ulcerative tinea pedis, appears as blisters, pus-filled bumps (pustules), and shallow open sores (ulcers). These lesions are especially common between the toes but may involve the entire sole. Because of the numerous breaks in the skin, lesions commonly become infected with bacteria. Ulcerative tinea pedis occurs most frequently in people with diabetes and others with weak immune systems. See https://www.skinsight.com/skin-conditions/adult/tinea-pedis-athletes-foot.

commenced that day. He was also prescribed "the same medications" that were previously prescribed by Dr. Edwards.

• **August 16, 2018:** Plaintiff was seen in telemedicine consultation by dermatologist, Dr. Schleicher, who diagnosed Plaintiff with Intertriginous Dermatitis.[2] At that time, Dr. Schleicher prescribed "an unidentified packet of pills, and an unidentified topical powder."

• **November 26, 2018:** Plaintiff presented to sick call with complaints of wounds now also on his right foot (the wounds were previously limited to his left foot). Plaintiff was examined by an unidentified physician assistant, who prescribed medications that resolved Plaintiff's condition.

• **February 11, 2019:** Plaintiff's wounds recurred, and he was seen by Mark Collins, PA-C, who examined Plaintiff and, thereafter, sent him to the infirmary "for a culture to be taken a second time."

• **February 14, 2019:** Plaintiff discussed the culture results with Dr. Voorstad, and the treatment plan was continued.

• **March 11, 2019:** Plaintiff was examined by an unidentified physician assistant, and an "unidentified medication" was prescribed.

• **May 7, 2019:** Plaintiff was examined by an unidentified physician assistant, and an "unidentified medication" was prescribed.

• **May 13, 2019:** Plaintiff's bilateral foot wounds were examined by Greg Forsyth, PA-C; however, no new medications were ordered.

---

[2]Intertrigo (also known as intertriginous dermatitis) is an inflammatory condition of skin folds, induced or aggravated by heat, moisture, maceration, friction, and lack of air circulation. <u>See</u> https://www.medscape.com/answers/1087691-37481/what-is-intertrigo-intertriginous-dermatitis.

• **May 29, 2019 and June 11, 2019:** Plaintiff's bilateral foot wounds were examined by Greg Forsyth, PA-C.

• **July 2, 2019:** Dr. Voorstad recommended bilateral foot soaks in Iodine; however, Plaintiff alleges that after three or four days, the Iodine caused damage to his feet. He claims this resulted in pain, and he was given crutches for ambulation.

• **July 8, 2019:** Plaintiff was seen by a podiatrist Dr. Barbacci, who diagnosed Plaintiff with Erythrasma Interdigital[3]; however, he did not recommend any additional treatment.

• **July 12, 2019:** Plaintiff asked Greg Forsyth, PA-C to excuse him from work; however, PA Forsyth refused.

• **July 15, 2019:** Plaintiff was seen by Dr. Voorstad, who prescribed pain medication.

• **July 18, 2019:** Plaintiff was seen by Dr. Voorstad for his bilateral foot wounds; however, he claims Dr. Voorstad "did not supply Plaintiff with comfortable footwear or permission to wear open ventilated shower shoes."

• **July 29, 2019:** Plaintiff was examined by Mark Collins, PA-C, who ordered a third wound culture. Also, that day, he was examined by Dr. Voorstad.

• **July 31, 2019:** Plaintiff was placed in the prison's infirmary for observation of his wounds. He remained in the infirmary through August 18, 2019.

---

[3]Erythrasma is a superficial infection of the skin caused by *Corynebacterium minutissimum*, a gram-positive, non-spore-forming bacillus. The disorder typically presents as macerated, scaly plaques between the toes or erythematous to brown patches or thin plaques in intertriginous area. See https://www.uptodate.com/contents/erythrasma.

• **August 5, 2019:** Plaintiff returned to see the podiatrist, Dr. Barbacci, who assured Plaintiff that his "conditions are improving."

• **January 3, 2020:** Plaintiff was seen by Dr. Voorstad after his foot wounds recurred. At that time, Dr. Voorstad ordered resumed wound care treatment.

• **January 20, 2020:** Justin Rutherford, PA-C examined Plaintiff's feet and prescribed Clindamycin.

• **January 23, 2020:** Dr. Voorstad examined Plaintiff and made the decision to discontinue Clindamycin (an antibiotic), and instead prescribed Ciprofloxacin (an antibiotic). He also ordered additional wound care services.

• **February 7, 2020:** Plaintiff was examined by Dr. Voorstad.

(Doc. 23, "Brief in Support of Plaintiff's Opposition").

On December 8, 2020, Plaintiff filed the instant action in which he seeks compensatory and punitive damages for his "pain and suffering mentally and physically caused by the discomfort" of "inadequate medications" and treatment provided by the "Defendant's negligence and deliberate indifference". (Doc. 1).

## III. MOTION TO DISMISS

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). The plaintiff

must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible. See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation marks omitted). The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of *pro se* prisoner litigation, the court must be mindful that a document filed *pro se* is "to be liberally construed." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it

appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## IV. DISCUSSION

### A. Eighth Amendment Medical Claim

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Ctv. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily

recognize the necessity for a doctor's attention." Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See

id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons."). The Court of Appeals for the Third Circuit in Durmer added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.

Plaintiff has failed to satisfy the deliberate indifference requirement of Estelle. Assuming without deciding that Plaintiff suffered from a serious medical need or condition, Plaintiff's pleadings clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Thus, Plaintiff's own admission averts any deliberate indifference with respect to treatment for his injury.  Specifically, Plaintiff states that he was seen by medical for his condition, provided wound care, and was given various medications by various medical professionals.

At best, Plaintiff's complaint demonstrates his disagreement with the type of treatment rendered. This is particularly so in light of the fact that there are no allegations in the complaint that Defendant Edwards intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer, 511 U.S. at 837; Rouse, 12 F.3d at 197. Thus, the allegations in the Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. Where, as here, an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist. Nottingham v. Peoria, 709 F. Supp. 542, 547 (M.D. Pa. 1988). At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence cannot serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

## B.  **Professional Negligence**

Pennsylvania Rule of Civil Procedure 1042.3 requires that a plaintiff file a certificate of merit ("COM") from a medical expert with respect to a

professional negligence claim against the United States.[4] Rule 1042.3 provides as follows:

> (a)   In any action based upon an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party that either
>
> (1)   an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm, or
>
> (2)   the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard, or
>
> (3)   expert testimony of an appropriate licensed professional is unnecessary for prosecution of the claim.

---

[4]A COM must be filed for a Pennsylvania state professional negligence claim or the claim will be dismissed. Velazquez v. UPMC Bedford Memorial Hospital, 328 F.Supp.2d 549, 558 (W.D. Pa. 2004).

PA. R. CIV. P. 1042.3(a).

If a plaintiff fails to file the required certificate within sixty (60) days of filing the complaint, the proper procedure in federal practice is to file a motion pursuant to Federal Rule of Civil 12(b)(6) to dismiss the professional negligence claim without prejudice. Stroud v. Abington Mem'l Hosp., 546 F.Supp.2d 236, 250 (E.D. Pa. 2008). "[T]he sixty-day deadline for filing a COM will be strictly construed and not lightly excused." Id. The rule applies to *pro se* as well as represented plaintiffs and constitutes a rule of substantive state law with which plaintiffs in federal court must comply. See Iwanejko v. Cohen & Grigsby, P.C., 249 Fed.Appx. 938, 944 (3d Cir. 2007); Maruca v. Hynick, 2007 WL 675038, at *3 (M.D. Pa. 2007) ("[T]he language of Rule 1042.3(a) – i.e., 'or the plaintiff if not represented ... shall file ... a certificate of merit' expressly requires that a *pro se* plaintiff must file a certificate of merit,").

Failure to file a certificate of merit under Rule 1042.3(a), or a motion for extension under Rule 1042.3(d), is fatal unless the plaintiff demonstrates that his failure to comply is justified by a "reasonable excuse." Perez v. Griffin, 304 Fed.Appx. 72 (3d Cir, 2008) (*per curiam*) (nonprecedential); see also Womer v. Hilliker, 908 A.2d 269, 279-80 (Pa. 2006) (holding that a court may reconsider judgment entered for failure to comply with Rule 1042.3 if

the plaintiff demonstrates a "reasonable excuse" for the noncompliance); Pa. R. Civ. P. 1042.6 (authorizing entry of *non-pros* judgment if a malpractice plaintiff fails to comply with Rule 1042.3).

In the instant case, Walker was required to file a COM producing expert testimony that the treatment of his alleged condition was causally related to any injury for which he seeks compensation. Walker filed his complaint on December 8, 2020. Thus, he was required to file a COM on or before February 8, 2021. Plaintiff's filing of his COM is now long overdue and as such, Plaintiff's professional negligence claim will be dismissed.

### C. *Res judicata*

On September 22, 2020, Plaintiff filed Walker v. Edwards, et al., Civil No. 3:20-cv-1714, in which he names the following SCI-Camp Hill employees: Dr. David Edwards, Dr. Voorstad and Physician's Assistant Greg Forsyth. Id. Plaintiff's action complains of an injury to his feet when he was issued a pair of refurbished boots. Id. By Memorandum and Order dated March 11, 2022, this Court granted Defendants' motion to dismiss Plaintiff's complaint for failing to articulate an arguable claim for deliberate indifference to a serious medical need. Id. Plaintiff raised the same claims against Defendant Edwards that are now alleged in the instant action. Id. No appeal was filed from the Court's March 11, 2022 Memorandum and Order. Id.

*Res judicata*, also known as claim preclusion, bars a subsequent suit where there has been: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489, 493 (3d Cir. 1990). "The doctrine of *res judicata* bars not only claims that were brought in a previous action, but also claims that could have been brought." Marmon Coal Co. v. Eckman, 726 F.3d 387, 394 (3d Cir. 2013). *Res judicata* "encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." Brown v. Felsen, 442 U.S. 127, 131 (1979).

Here, Plaintiff has not filed an appeal to the United States Court of Appeal for the Third Circuit, within thirty days of this Court's March 11, 2022 Memorandum and Order, thus, there is a final judge on the merits of the same claims and against the same parties. As such, Plaintiff's complaint is barred by *res judicata* and dismissal of the same is appropriate.

## V.  LEAVE TO AMEND

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Here, it is clear from the facts alleged in the *pro se* complaint that any attempt to amend the plaintiff's §1983 claims against the named Defendant would be futile. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, the Court will dismiss the Plaintiff's §1983 claims without leave to amend.

## VI. CONCLUSION

For the reasons set forth above, the Court will grant Defendant's motion to dismiss. (Doc. 21).

A separate Order shall issue.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: August 23, 2022**
20-2293-01